Filed 3/5/21  P. v. Morgan CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DON CARLOS MORGAN,<br><br>Defendant and Appellant. | B301411<br><br>(Los Angeles County<br>Super. Ct. No. BA152037) |

APPEAL from an order of the Superior Court of Los Angeles County, Robert J. Perry, Judge.  Affirmed.

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

In 2000, a jury convicted Don Carlos Morgan of first degree murder and other crimes arising from a gang-related shooting. After passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), Morgan petitioned for resentencing pursuant to Penal Code section 1170.95.[1] The trial court summarily denied the petition, concluding that Morgan was ineligible for resentencing because he was an actual killer, and because Senate Bill 1437 and section 1170.95 were unconstitutional.

Morgan appeals, contending that the trial court erred by summarily denying his petition without appointing counsel and by relying on the record of conviction and its own notes regarding the case. He also avers that Senate Bill 1437 and section 1170.95 are constitutional.

Because the jury instructions show as a matter of law that Morgan was not tried or convicted under the felony-murder rule or the natural and probable consequences doctrine, and the jury's verdicts demonstrate it found he was the actual killer who intended the murder, we affirm the court's order.

**FACTUAL AND PROCEDURAL BACKGROUND[2]**

1. *The murder*

In March 1997, Glen J., a member of the Four-Trey Gangster Crip criminal street gang (the "Four-Treys") was beaten up by members of a rival gang, the Marvin Street Gangster Crip

---

[1]    All further undesignated statutory references are to the Penal Code.

[2]    At the People's request, and over Morgan's opposition, we take judicial notice of this court's records in his direct appeal, No. B142609, including our prior opinion in the case. (Evid. Code, §§ 451, 452, subd. (d), 459.) We derive the factual and procedural background in part from our prior opinion.

gang (the Marvins). A day or two later, Marvins member Tyrone Haywood was murdered. The Marvins apparently assumed the Four-Treys were responsible. Morgan and codefendant Richard Steve Hammond were both Marvins gang members.

On April 2, 1997, at approximately 5:00 p.m., Four-Trey members Michael Blessitt, C.C., and T.T. were sitting in Blessitt's Buick Regal on East 43rd Street in Los Angeles. A small turquoise car pulled up next to the Buick. One man leaned out of the front passenger window, holding a rifle; another yelled, "Fuck Four Tramp" (a derogatory name for the Four-Treys). Gunfire erupted. All three occupants of the Buick were hit, Blessitt fatally. Twenty to 30 bullets struck the Buick.

Later that evening, two police officers were driving in the area and looking out for Four-Trey gang members, expecting possible retaliation. The officers spotted Morgan walking along the street. Morgan looked at the officers, pulled out a gun, and pointed it at them. One of the officers drew his own firearm. Morgan ran, and tossed his gun away. He was eventually apprehended and his gun was recovered. A cartridge casing discovered at the shooting scene had been fired from the gun Morgan discarded.

At trial, C.C. testified that Morgan was the person leaning out the car window holding a rifle, and Hammond was the passenger who uttered a gang challenge. In a taped, pretrial interview, a bystander told police that it sounded like the gunfire came from two different weapons. A former U.S. Marine who had stolen an M-16 rifle from a Marine Corps base testified that he had given the stolen rifle to Hammond for safekeeping, but never saw it again. One of the casings found at the shooting scene was of a type typically fired from an M-16 military assault rifle.

3

2. *Morgan's conviction and direct appeal*

Morgan and Hammond were tried twice.  At the first trial, the jury convicted Morgan of possession of a firearm by a felon, but was unable to reach a verdict on the other counts.  The court declared a mistrial on the remaining counts.

At Morgan's second trial, as at his first, the People's theory was that both Morgan and Hammond shot at the victims and were direct perpetrators.  The jury was instructed on murder, malice aforethought, deliberate and premeditated murder, murder by means of shooting from a motor vehicle, and a drive-by special circumstance allegation.  It was not instructed on aiding and abetting principles, nor was it instructed on the natural and probable consequences doctrine or the felony-murder rule.

The jury found Morgan guilty of the first degree murder of Blessitt (§ 187, subd. (a)), and found true the special circumstance allegation that the murder was intentional and perpetrated by means of discharging a firearm from a motor vehicle, with the intent to inflict death.  (§ 190.2, subd. (a)(21).)  It also found that Morgan personally used a firearm in commission of the offense.  (§ 12022.5, subd. (a)(1).)  It further convicted Morgan of the willful, deliberate, and premeditated attempted murders of C.C. and T.T., with true findings on personal firearm use allegations (§ 664, 187, subd. (a), 12022.5, subd. (a)(1)), and two counts of assault with a firearm on a peace officer (§ 245, subd (d)(2)).

As to Hammond, the jury indicated it was deadlocked.  At the prosecutor's request, the court provided additional instruction to the jury on aiding and abetting principles, and the prosecutor and defense counsel were allowed to present additional argument.  The jury thereafter found Hammond guilty of first

4

degree murder, with a drive-by shooting special circumstance, as well as the willful, deliberate, and premeditated attempted murders of C.C. and T.T. It found the allegation that Hammond personally used a firearm during the offenses not true.

The trial court sentenced Morgan to life in prison without the possibility of parole, plus two life terms, plus 41 years 4 months. This court modified and affirmed Morgan's judgment in 2002.[3] (*People v. Hammond* (Sept. 16, 2002, B142609) [nonpub. opn.].)

3. *The section 1170.95 petition*

On June 30, 2019, Morgan filed a section 1170.95 petition, seeking resentencing on his murder conviction. Using a preprinted form, he checked boxes stating that a charging document had been filed against him allowing the prosecution to proceed under the felony-murder rule or the natural and probable consequences doctrine; he was convicted of first or second degree murder under one of those theories; he could not now be convicted of murder in light of changes to the law wrought by Senate Bill 1437; he was not the actual killer, nor did he aid and abet the actual killer with the intent to kill; and he was not a major participant in the felony and did not act with reckless indifference to human life. He also requested the appointment of counsel.

The trial court summarily denied the petition. Morgan was not present, and was not represented by counsel. In its written order, the court described the facts of the case and concluded "Morgan is ineligible for sentencing relief under Penal Code

---

[3] The matter was remanded to the trial court to correct an error in the abstract of judgment and for recalculation of presentence custody credits.

§ 1170.95 because he was an actual killer.  See Penal Code § 189(e)(1)."  As a "second and independent ground" for denial of the petition, the court ruled that Senate Bill 1437 and section 1170.95 were unconstitutional.

Morgan filed a timely notice of appeal.  At his counsel's request, this court ordered the trial court to identify all documents it reviewed in connection with its denial of the petition.  Thereafter, the trial court filed a declaration stating that in preparing its ruling, it relied upon the Court of Appeal opinion, its own notes summarizing both trials, and its own recollection of the case.

## DISCUSSION

1. *Applicable legal principles*

    a. *Senate Bill 1437*

Senate Bill 1437, which took effect on January 1, 2019, limited accomplice liability under the felony-murder rule and eliminated the natural and probable consequences doctrine as it relates to murder, to ensure that a person's sentence is commensurate with his or her individual criminal culpability. (*People v. Gentile* (2020) 10 Cal.5th 830, 842–843; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 323 (*Verdugo*), review granted Mar. 18, 2020, S260493; *People v. Munoz* (2019) 39 Cal.App.5th 738, 749–750, 763, review granted Nov. 26, 2019, S258234.)

Prior to Senate Bill 1437's enactment, under the felony-murder rule "a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 247–248 (*Lamoureux*); *People v. Powell* (2018) 5 Cal.5th 921,

6

942.) Similarly, under the natural and probable consequences doctrine, a defendant was "liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense." (*Lamoureux*, at p. 248.)

Senate Bill 1437 amended the felony-murder rule by adding section 189, subdivision (e), which provides that a participant in the perpetration of qualifying felonies is liable for felony murder only if the person: (1) was the actual killer; (2) was not the actual killer but, with the intent to kill, acted as a direct aider and abettor; or (3) the person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in section 190.2, subdivision (d). (See *People v. Gentile, supra*, 10 Cal.5th at p. 842.) It amended the natural and probable consequences doctrine by adding subdivision (a)(3) to section 188, which states that "[m]alice shall not be imputed to a person based solely on his or her participation in a crime."

b. *Section 1170.95's petitioning procedure*

Senate Bill 1437 also added section 1170.95, which created a procedure whereby persons convicted of murder under a now-invalid felony-murder or natural and probable consequences theory may petition for vacation of their convictions and resentencing. A defendant is eligible for relief under section 1170.95 if he meets three conditions: (1) he must have been charged with murder by means of a charging document that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences

7

doctrine, (2) must have been convicted of first or second degree murder, and (3) he could no longer be convicted of first or second degree murder due to changes to sections 188 and 189 effectuated by Senate Bill 1437. (§ 1170.95, subd. (a).)

Evaluation of a section 1170.95 petition requires a multi-step process: an initial review to determine the petition's facial sufficiency; a prebriefing, " 'first prima facie review' " to preliminarily determine whether the petitioner is statutorily eligible for relief as a matter of law; and a second, postbriefing prima facie review to determine whether the petitioner has made a prima facie case that he or she is entitled to relief. (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 897 (*Tarkington*), review granted Aug. 12, 2020, S263219; *Verdugo, supra,* 44 Cal.App.5th at pp. 327–330, rev.gr.)

When conducting the first prima facie review, the court must determine, based upon its review of readily ascertainable information in the record of conviction and the court file, whether the petitioner is statutorily eligible for relief as a matter of law, i.e., whether he or she was convicted of a qualifying crime, pursuant to the natural and probable consequences doctrine or a felony-murder theory. (*Tarkington, supra*, 49 Cal.App.5th at pp. at pp. 897–898, rev.gr.; *Verdugo, supra*, 44 Cal.App.5th at pp. 329–330, rev.gr.) If it is clear from the record of conviction that the petitioner cannot establish eligibility as a matter of law, the trial court may summarily deny the petition without appointing counsel. (*Tarkington*, at pp. 898, 900–902; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1173, review granted June 24, 2020, S262011; *Verdugo*, at p. 332; *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1139–1140, review granted Mar. 18, 2020, S260598.)

8

If, however, the petitioner's ineligibility is not established as a matter of law, the court must appoint counsel and permit briefing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief. (*Verdugo, supra*, 44 Cal.App.5th at p. 330, rev.gr.; *Tarkington, supra*, 49 Cal.App.5th at p. 898, rev.gr.) If the petitioner makes such a showing, the court must issue an order to show cause and conduct a hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subds. (c), (d); *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1166.) At that hearing, the prosecution has the burden to prove, beyond a reasonable doubt, that the defendant is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)

2. *Contentions*

Morgan challenges the trial court's ruling on several grounds. He argues that: (1) the trial court erred by concluding Senate Bill 1437 was unconstitutional; (2) his petition stated a prima facie case, and therefore he had a statutory, Sixth Amendment, and due process right to the appointment of counsel; and (3) the trial court improperly based its ruling on this Division's prior opinion in the case and materials outside the record of conviction.

The People agree that Senate Bill 1437 is constitutional, and they concede that the trial court apparently erred by making factual findings based on the record. However, they aver that denial of the petition was proper because Morgan was ineligible for relief as a matter of law for several reasons: (1) based on the instructions given, the jury must have concluded Morgan was the actual killer; (2) the jury was not instructed on the natural and probable consequences doctrine or the felony-murder rule; and

9

(3) the jury's true finding on the drive-by murder special circumstance demonstrates it found Morgan had the intent to kill.

We agree with the People that the petition was properly denied.  Although the trial court incorrectly concluded that Senate Bill 1437 is unconstitutional, and possibly based its conclusion that Morgan was the actual killer on its own evaluation of the facts, any error was manifestly harmless.  The jury instructions and the jury's verdicts conclusively show, as a matter of law, that Morgan was ineligible for relief.  We " 'review the ruling, not the court's reasoning, and if the ruling was correct on any ground, we affirm.' " (*People v. Chism* (2014) 58 Cal.4th 1266, 1295, fn. 12.)

3. *Senate Bill 1437 is constitutional*

As the parties agree, to the extent the court denied the petition on the ground Senate Bill 1437 is unconstitutional, it erred.  Subsequent to the trial court's ruling in this matter, appellate courts have uniformly rejected challenges to Senate Bill 1437's constitutionality.  (See, e.g., *People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270, 275, 286 [Sen. Bill 1437 did not unconstitutionally amend Props. 7 or 115, because it neither added to, nor took away from, those initiatives]; *Lamoureux, supra*, 42 Cal.App.5th at pp. 246, 251–252, 256, 264 [Sen. Bill 1437 did not improperly amend Props. 7 or 115 or the Victims' Bill of Rights Act of 2008 (Marsy's Law), and does not violate separation of powers principles by usurping the executive's clemency power or impairing the judiciary's core functions]; *People v. Solis* (2020) 46 Cal.App.5th 762, 769, 779–780; *People v. Johns* (2020) 50 Cal.App.5th 46, 54–55.)  We agree with the

reasoning of these authorities. As the parties are also in agreement, we need not further address the issue here.

4. *Denial of the petition was proper because the record of conviction shows Morgan was ineligible as a matter of law*

To be eligible for resentencing, Morgan was required to show that he "could not be convicted of first or second degree murder because of changes to Section 188 or 189" made by Senate Bill 1437. (§ 1170.95, subd. (a)(3).) The record of conviction conclusively demonstrates that Morgan cannot make such a showing. "[P]otential relief under section 1170.95 extends only to those convicted of murder by operation of the natural and probable consequence doctrine or of felony murder. [Citation.]" (*People v. Soto* (2020) 51 Cal.App.5th 1043, 1056 (*Soto*), review granted Sept. 23, 2020, S263939; *People v. Lee* (2020) 49 Cal.App.5th 254, 263–265, review granted July 15, 2020, S262459.) Morgan's jury was not instructed on either the natural and probable consequences doctrine or the felony-murder rule; therefore, he could not have been convicted based on either of these theories. (*Soto*, at p. 1055 [trial court may rely on jury instructions when determining whether petitioner has made a prima facie showing of entitlement to relief]; *People v. Edwards* (2020) 48 Cal.App.5th 666, 674, review granted July 8, 2020, S262481 [where jury instructions showed petitioner was not convicted under felony-murder rule or natural and probable consequences theory, he could not meet the statutory prerequisites for filing a § 1170.95 petition]; *People v. Lewis*, *supra*, 43 Cal.App.5th at p. 1138, rev.gr. [where court file shows petitioner was convicted of murder without instruction or argument on the felony-murder rule or the natural and probable consequences doctrine, summary denial would be appropriate].)

11

Furthermore, Morgan's jury was not instructed on direct aiding and abetting principles. It convicted him of first degree murder, and found true the drive-by special circumstance allegation. Based on the instructions given, its verdicts demonstrate it necessarily found Morgan guilty as the actual killer, who intended the killing.[4] Section 1170.95 does not provide for relief for such persons. Senate Bill 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Where the record shows, as a matter of law, that the petitioner

---

[4] The jury was instructed that if it found "the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection and not under a sudden heat of passion or other condition precluding the idea of deliberation, it is murder of the first degree."

The instructions further provided that to find the drive-by special circumstance true, the jury had to find the perpetrator intentionally discharged the firearm with the intent to inflict death.

CALJIC No. 8.25.1 provided: "Murder which is perpetrated by means of discharging a firearm from a motor vehicle intentionally at another person outside of the vehicle when the perpetrator specifically intended to inflict death, is murder of the first degree."

was not tried under the natural and probable consequences doctrine or the felony-murder rule, and was the actual killer, he necessarily "was convicted on a theory that survives the changes to sections 188 and 189" enacted by Senate Bill 1437. (*Tarkington*, *supra*, 49 Cal.App.5th at p. 899, rev.gr.)

> 5. *Morgan fails to demonstrate reversible error*

Morgan makes several arguments in support of his view that the trial court erred by denying his petition. We address each in turn.

> a. *The trial court did not err by reviewing this court's opinion in Morgan's direct appeal*[5]

Morgan asserts that the trial court erred by relying on this Division's prior opinion and the court's own case summary notes as the basis for its denial of the petition.

Numerous Courts of Appeal have rejected the argument that a trial court is limited to consideration of the allegations in the petition when determining whether the petitioner has made a prima facie showing of eligibility. To the contrary, a court may consider readily ascertainable information in the record of conviction and the court file, including a prior Court of Appeal opinion. (See *People v. Palacios* (2020) 58 Cal.App.5th 845, 855–856, review granted Feb. 24, 2021, S266701; *People v. Gomez* (2020) 52 Cal.App.5th 1, 15–16, review granted Oct. 14, 2020, S264033; *People v. Soto*, *supra*, 51 Cal.App.5th at pp. 1054–1055,

---

[5] Our California Supreme court is currently reviewing whether a trial court may consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under section 1170.95. (*People v. Lewis*, S260598.) Pending further guidance from our high court, Morgan's arguments do not persuade us to deviate from our prior holdings that such reliance is proper.

13

rev.gr.; *Tarkington, supra,* 49 Cal.App.5th at pp. 899, & fn. 5, 909, rev.gr.; *People v. Lee, supra,* 49 Cal.App.5th at pp. 262–263, rev.gr.; *People v. Law* (2020) 48 Cal.App.5th 811, 821, review granted July 8, 2020, S262490; *People v. Torres, supra,* 46 Cal.App.5th at pp. 1173, 1178, rev.gr.; *Verdugo, supra,* 44 Cal.App.5th at pp. 329–330, 333, rev.gr.; *People v. Lewis, supra,* 43 Cal.App.5th at pp. 1136–1138 & fn. 7, rev.gr.)

Accordingly, the trial court did not err by considering this Division's prior opinion in Morgan's direct appeal. It is not altogether clear whether the court premised its ruling on the prior opinion's description of the verdicts, or on its own evaluation of the evidence presented at trial. To the extent, if at all, that its ruling was premised on the latter, it erred. While a court must weigh the evidence after the issuance of an order to show cause and a hearing, such factfinding is beyond the court's authority at the eligibility stage. (*Verdugo, supra,* 44 Cal.App.5th at p. 329, rev.gr. ["The court's role at [the eligibility] stage is simply to decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner"]; *People v. Perez* (2020) 54 Cal.App.5th 896, 903–904, review granted Dec. 9, 2020, S265254; *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 [court's authority to make determinations without conducting an evidentiary hearing is limited to readily ascertainable facts from the record, rather than factfinding involving the weighing of evidence].)[6]

---

[6] Additionally, it is unclear whether the court relied on its own case summary notes as a basis for denying the petition. Certainly, a trial court does not err by reviewing its own notes or case summaries to refresh its recollection about a matter. But

14

Nonetheless, for the reasons we have explained *ante,* denial of the petition was proper and the court's missteps, if any, are of no moment.  (See *People v. Edwards, supra,* 48 Cal.App.5th at p. 675, rev.gr. [any procedural errors "were harmless under any standard of review [citations] and remand would be an idle act" because defendant did not fall within the provisions of § 1170.95 as a matter of law].)

b. *The trial court did not err or violate Morgan's rights by failing to appoint counsel*

Nor are we persuaded that the trial court was required to appoint counsel as soon as Morgan filed a facially sufficient petition.  We and other courts have held that a trial court may summarily deny a petition without appointing counsel if the record shows the defendant is ineligible as a matter of law.[7]

---

such notes or summaries are not part of the record, and therefore are not a proper basis for denial at the eligibility stage.

[7]    Morgan argues that *Verdugo, supra,* 44 Cal.App.5th 320, review granted, *People v. Lewis, supra,* 43 Cal.App.5th 1128, review granted, and similar cases, were wrongly decided, and instead *People v. Cooper* (2020) 54 Cal.App.5th 106, review granted November 10, 2020, S264684, correctly states the law. This Division's majority opinion in *Tarkington, supra,* 49 Cal.App.5th 892, review granted, agreed with *Verdugo. Cooper,* on the other hand, adopted the analysis set forth by our dissenting colleague in *Tarkington.*  To date, the majority of appellate courts have agreed with *Verdugo* rather than *Cooper.* Our Supreme Court is currently considering when the right to counsel arises under section 1170.95, subdivision (c).  (*People v. Lewis,* S260598.)  Until further guidance is issued by our high court, we respectfully disagree with *Cooper* and maintain our view that *Verdugo* is correctly reasoned.

(See *Tarkington, supra*, 49 Cal.App.5th at pp. 901–902, rev.gr.; *People v. Torres, supra*, 46 Cal.App.5th at p. 1173, rev.gr.; *Verdugo, supra*, 44 Cal.App.5th at pp. 332–333, rev.gr.; *People v. Lewis, supra*, 43 Cal.App.5th at pp. 1139–1140, rev.gr.; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58, review granted Mar. 18, 2020, S260410; but see *People v. Cooper, supra*, 54 Cal.App.5th at p. 109, rev.gr.) Such was the case here.

Morgan argues that because his petition established a prima facie case, section 1170.95 required that counsel be appointed for him. We disagree. The statutory right to counsel is not triggered merely by the filing of a petition that checks the correct boxes, where the petition's assertions are conclusively refuted by the record. Morgan's petition averred that he was convicted of murder pursuant to the felony-murder rule or the natural and probable consequences doctrine. As we have seen, this assertion is demonstrably incorrect. He also averred that he was not the actual killer. Again, the record—i.e., the instructions and the verdicts—belies this assertion as a matter of law. The trial court was not obliged to credit averments in the petition that are conclusively refuted by the record of conviction. (See, e.g., *People v. Drayton, supra*, 47 Cal.App.5th at p. 968 [in assessing whether a petitioner has established a prima facie case, trial court "should accept the assertions in the petition as true unless facts in the record conclusively refute them as a matter of law"]; *People v. Nguyen, supra*, 53 Cal.App.5th at pp. 1165–1166.)[8]

---

[8] Morgan contends that it is unfair for the trial court to resolve contested issues of fact relevant to a petition without the appointment of counsel. We agree: as *Verdugo* explained, at the eligibility stage, the court must make all factual inferences in the

Morgan contends that he had a constitutional right to counsel at the outset because the petitioning procedure under section 1170.95 is a critical stage of a criminal proceeding. This is so, he avers, because of the adversary nature of the petition process, combined with the potential for significant prejudice. Therefore, he contends, the trial court's failure to appoint counsel amounted to structural error, requiring per se reversal. We disagree.

Under both the state and federal Constitutions, a defendant has a right to counsel at all critical stages of a criminal prosecution. (U.S. Const., 6th Amend.; Cal. Const., art I, § 15; *Gardner v. Appellate Division of Superior Court* (2019) 6 Cal.5th 998, 1004, (*Gardner*); *People v. Doolin* (2009) 45 Cal.4th 390, 453; *People v. Rouse* (2016) 245 Cal.App.4th 292, 296–297 (*Rouse*).) Critical stages are those "events or proceedings in which the accused is brought in confrontation with the state, where potential substantial prejudice to the accused's rights inheres in the confrontation, and where counsel's assistance can help to avoid that prejudice." (*Gardner*, at pp. 1004–1005; *Rouse*, at p. 297 [" ' "[T]he essence of a 'critical stage' is . . . the adversary nature of the proceeding, combined with the possibility that a defendant will be prejudiced in some significant way by the absence of counsel." [Citation.]' [Citation.]"].) Thus, arraignments, preliminary hearings, postindictment lineups and

<hr>

petitioner's favor. (*Verdugo*, *supra*, 44 Cal.App.5th at p. 329, rev.gr.; *Tarkington*, *supra*, 49 Cal.App.5th at p. 898, rev.gr.) But here, Morgan's ineligibility is apparent as a matter of law, based on the jury instructions and the verdicts, and does not turn on the resolution of disputed facts.

17

interrogations, plea negotiations, and sentencing are all critical stages.  (*Gardner*, at p. 1005.)

On the other hand, where legislation gives inmates serving otherwise final sentences the benefit of ameliorative changes to applicable sentencing laws, the Sixth Amendment is not necessarily implicated.  (See *People v. Perez* (2018) 4 Cal.5th 1055, 1063–1064; *People v. Howard* (2020) 50 Cal.App.5th 727, 740 ["The retroactive relief provided by section 1170.95 reflects an act of lenity by the Legislature" and does not implicate a defendant's Sixth Amendment rights]; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156–1157 ["the retroactive relief . . . afforded by Senate Bill 1437 is not subject to Sixth Amendment analysis" and defendants had no right to a jury trial on petition].)

The first, prebriefing prima facie review of a petition under section 1170.95 is not a critical stage of the proceedings.  At that point, the court is simply tasked with determining whether there is a prima facie showing the petitioner falls within the provisions of the statute as a matter of law, making all factual inferences in his or her favor.  (*Verdugo, supra*, 44 Cal.App.5th at p. 329, rev.gr.; *Tarkington, supra*, 49 Cal.App.5th at p. 898, rev.gr.)  This initial prima facie review is not an adversarial proceeding. Indeed, in the instant case it does not appear that the People filed briefing or otherwise played any role in the trial court's denial of the petition.  Adjudication of a section 1170.95 petition, at the eligibility stage, is not akin to a sentencing hearing.  The court does not rule on disputed issues of fact; it must make all factual inferences in favor of the petitioner.  (*Verdugo*, at p. 329; *Tarkington*, at p. 898.)  And, the court is not called upon to exercise its discretion in any respect.  Nor do we detect the possibility that counsel's absence could prejudice a petitioner in a

significant way, or that counsel's presence at this stage is necessary to preserve his rights.  Because the court's ruling must turn on undisputed facts that render a petitioner ineligible as a matter of law, counsel's representation could not meaningfully impact this analysis.

Morgan points out that due process requires an incarcerated defendant must be afforded the right to counsel in various instances even where the Sixth Amendment does not. "[I]f a postconviction petition by an incarcerated defendant 'attacking the validity of a judgment states a prima facie case leading to issuance of an order to show cause, the appointment of counsel is demanded by due process concerns.' [Citations.]" (*Rouse, supra*, 245 Cal.App.4th at p. 300; *People v. Fryhaat* (2019) 35 Cal.App.5th 969, 980–981.)  "That right is a limited one, however, and only kicks in once the defendant makes a prima facie showing of entitlement of postconviction relief." (*People v. Cole* (2020) 52 Cal.App.5th 1023, 1032, review granted Oct. 14. 2020, S264278.)  Here, Morgan has not moved past the initial eligibility stage; he has not made a prima facie case requiring issuance of an order to show cause.  Accordingly, he had no due process right to counsel.  And, because Morgan is categorically ineligible for relief, he could have had no liberty interest in the appointment of counsel.  (See *Tarkington, supra*, 49 Cal.App.5th at pp. 907–908, rev.gr.)

19

## DISPOSITION

The order is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EDMON, P. J.

I concur:

DHANIDINA, J.

LAVIN, J., Dissenting:

For the reasons laid out in my dissent in *People v. Tarkington* (2020) 49 Cal.App.5th 892, 917, review granted August 12, 2020, S263219, and the holding and analysis in *People v. Cooper* (2020) 54 Cal.App.5th 106, 109, review granted November 10, 2020, S264684, I would reverse the order and direct the trial court to conduct further proceedings in accordance with Penal Code section 1170.95.


LAVIN, J.


1